### JOHN LUTTENTON v. WILLIAM FRITZ.

*Trespass—Injury to animal—Insufficient evidence.*

In this case plaintiff sought to recover the value of a horse whose leg was broken, as alleged, by defendant's throwing a stone while chasing the animal from his father's wheat field. And it is held that a verdict should have been directed in favor of defendant for want of evidence tending to make out plaintiff's case.

Error to Jackson. (Peck, J.) Submitted on briefs October 22, 1890. Decided November 14, 1890.

Trespass. Defendant brings error. Reversed. The facts are stated in the opinion.

83 MICH—10.

*A. E. Hewett (Austin Blair*, of counsel), for appellant.
*Barkworth & Cobb*, for plaintiff.

MORSE, J. This is an action of trespass, originally brought in justice's court, to recover the value of a horse which plaintiff claims was injured by defendant, so that the animal had to be killed. Plaintiff recovered in that court, and, upon appeal to the circuit, judgment was again rendered in his favor. The chief error assigned is that the circuit judge did not direct a verdict in favor of the defendant as requested.

The undisputed evidence showed that the horse was trespassing upon the lands of defendant's father. The defendant testifies that he saw the horses of plaintiff in his father's wheat field, and ran after them to drive them out; that they jumped over the fence into the highway, and he went back to his work plowing. The horse in question was found in the highway with his leg broken. The theory of the plaintiff was that the defendant threw a stone at the horse, which struck and broke its leg. The defendant's counsel contend that there was no testimony legitimately tending to support this theory.

The testimony relied upon to support plaintiff's claim may be summarized as follows: Plaintiff and defendant's father owned adjoining farms. In May, 1888, in the afternoon, plaintiff turned his team of horses into the highway to feed while he planted beans. About 5 o'clock P. M., the horse was found just outside of the fence in the highway with his leg broken. The plaintiff and others testified that inside the field, about 12 rods from where the horse was found, they found blood on the ground, and marks showing that the horse had dragged one leg. They found also a place where it looked as if the fence had been let down and put up again recently,

as the rails did not lie in the old notches. There was blood on the bottom rail, and the prints of a horse's hoof, and there was blood on the rails on each side of the fence. Plaintiff says:

"Right near where the fence had been let down in the field, there had been a stone removed, nearly as large as my head, and where that stone had lain the ground was moist; and around that stone it had bled so that it had run off around that stone some. The stone was found down in the crook of the fence saturated with blood,—covered with blood. * * * Where the stone was found, I placed it back in the place where it had come from, and it fitted exactly."

Upon cross-examination, plaintiff testified:

"I showed him [defendant] the stone covered with blood. He wanted to know if I claimed that was the stone he threw. I said, 'No, sir. That is the stone he stood and bled on, and was thrown down in the crook of the fence to conceal the blood.'"

When the plaintiff's proofs were closed, defendant's counsel asked the court to direct a verdict for defendant, on the ground that there was no evidence tending to show that the defendant had thrown anything at the horse, or had done anything more than to drive the horse out of the field where the animal was a trespasser by shouting and running after it, there being some testimony that the defendant was seen chasing the horse and hallooing. The court refused to do so. Thereupon, the plaintiff was again put on the stand in his own behalf, and testified:

"I examined at about the point where the horse commenced to draw his foot on the ground that I spoke of before, and found a rock there just about the size of my fist. It lay loose on the ground, and one side of it was a little moist, as though it had been brought from somewhere and recently left there. This stone was found

right at the point where the horse commenced to drag his foot."

On cross-examination, he further said that he found the stone six or eight feet from the fence, and that he just picked it up and looked at it, and threw it down again. Did not keep it, but kept the other one. When asked why he did not testify about this stone when first examined, he answered that he was not asked to. Mr. Rowe was then called as a witness by plaintiff, and gave evidence as to the condition of the fence, and seeing blood and the large stone, substantially corroborating the plaintiff in this respect. He also said:

"My attention was called to a smaller stone, the size of my fist, perhaps a little larger, that by the appearance had been evidently thrown into the corner of the fence."

The father of the defendant testified that this corner of the fence, which the plaintiff claimed had been recently let down and put up again, was let down in the spring, when he was clearing the fence corners, and remained down until he sowed clover seed in April. Then he put it up, and it had since remained up. The defendant denied hitting the horse with anything, and claimed he did not get nearer than eight or ten rods of the animal; that he saw the horse jump the fence near by where he was found; that as he jumped he fell, and then got up again, and defendant returned to his work.

The circuit judge correctly charged the law on the supposition that the jury might find as a matter of fact that the defendant threw a stick or stone, and broke the horse's leg with the same, explaining to them under what circumstances the throwing of such stick or stone would render him liable for the damage to the horse.

The theory of the plaintiff, and upon which he sought

to recover, is stated by his counsel in their brief as follows:

"The theory upon which plaintiff presented this case to the jury was that the defendant threw at the horse the stone found at the point where it commenced to drag its foot; that such' stone struck and broke the leg. Thereupon, he let down the fence, during which time the horse stood and bled over the stone, which was placed in the corner of the fence by the defendant for the purpose of concealment. The horse was thereupon driven into the highway and left."

This is a theory constructed entirely from circumstances and inferences therefrom. The question is, was the jury warranted in finding this theory to be a fact by legitimate inferences from the testimony? We think not. The testimony shows that stones were lying, both big and little ones, along the fence and in the corners on both sides. No examination was made of the wound in the horse's leg, or any testimony offered to show what caused it. It was simply shown that it was broken above the gambrel joint. The verdict should have been directed for the defendant.

The judgment is reversed, with costs, and a new trial granted.

The other Justices concurred.